■ In the Matter of GEORGE KORBA, Petitioner, v NEW YORK STATE TAX COMMISSION et al., Respondents. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission which sustained imposition of additional sales and use taxes in the amount of $6,504.40 plus interest and penalties of $2,491.93 for a total of $8,996.33 for the periods June 1, 1973 through May 31, 1976. Petitioner owned and operated Korba's Restaurant in Binghamton, New York. In this proceeding, petitioner challenges respondent's auditing techniques and contends that his records contain all the information necessary to determine the exact tax due without utilization of a "test period"* which results in an estimated tax only. Petitioner asserts that the tax auditor's failure to examine the guest checks is an automatic violation of section 1138 of the Tax Law thus invalidating the "test period" audit. Petitioner further argues that an analysis of the

* In a "test period" audit, a fraction of the full tax period under scrutiny is fully audited and the results are extrapolated over the full period to determine the total tax due.

guest checks with the register tapes would provide all necessary information. Petitioner's contentions are without merit. The proof indicates that the records of the restaurant, including the guest checks, were unreliable and inaccurate. Use of external indices to determine the tax due was, therefore, appropriate. The determination of the State Tax Commission should be confirmed. Section 1105 (subd [d], par [i]) of the Tax Law imposes a tax on the sale of food and drink by restaurants. Section 1132 of the Tax Law requires the vendor of food and beverages to collect this tax on behalf of the State, and subdivision (c) of that section places the burden of proof on the taxpayer to show that any particular item of food is not taxable. The vendor is obligated to maintain records of his sales for audit purposes (Tax Law, § 1135), and the State, when conducting an audit, must determine the amount of tax due "from such information as may be available" but "[i]f necessary, the tax may be estimated on the basis of external indices" (Tax Law, § 1138, subd [a], par [1]). It is true that the State Tax Commission cannot simply ignore a taxpayer's records and conduct a "test period" audit if the taxpayer's records are readily available and provide an adequate basis on which to determine the amount of tax due (Matter of W. T. Grant Co. v Joseph, 2 NY2d 196, cert den 355 US 869; Matter of Mohawk Airlines v Tully, 75 AD2d 249). However, when the records are not so sufficient, "test period" and percentage markup audits are permissible (Matter of Murray's Wines & Liqs. v State Tax Comm., 78 AD2d 947; Matter of Sakran v State Tax Comm., 73 AD2d 989). Moreover, when a taxpayer's record keeping is faulty, exactness is not required of the examiner's audit (Matter of Meyer v State Tax Comm., 61 AD2d 223, 228, mot for lv to app den 44 NY2d 645) and an item-by-item analysis is unnecessary (Matter of W. T. Grant Co. v Joseph, supra, p 206; Matter of Sakran v State Tax Comm., supra, p 990). In the instant proceeding, the record establishes that petitioner's guest checks were clearly defective and useless in serving as a verifiable record of taxable sales of food. The restaurant maintained no record of how many guest checkbooks were issued to a particular waitress over an identifiable time period, nor any record of how many checks a waitress used from a book. The books were used interchangeably by the waitresses. The guest checks were undated. Voided checks were simply thrown away without any accounting for them. Although the checks were numbered, petitioner never fully reconciled the checks to the register tapes. The guest checks were stored haphazardly, in no particular sequence, in boxes. The auditor could not have verified that any one check had been rung up on the register. In short, the guest checks retained by the restaurant for the audit period were useless for audit purposes. The amount of taxable sales for food could not be determined from an examination of the guest checks and the cash register tapes. The tax auditor determined the need for a "test period" audit when his initial analysis of petitioner's books, based on his examination of sales and purchases recorded in the restaurant's books, showed an average markup for the audit period of 141% for beer, 163% for liquor and 58% for food. Based on his experience, he considered the 58% markup for food to be low and an indication that all food sales were not recorded on the taxpayer's books. The auditor then conducted the "test period" audit. The final tax deficiency assessment was based upon the results of that audit. Petitioner's contention that the tax determination was based on nontaxable items because it did not make any allowance for food consumed by his family or employees is without merit. Petitioner had the burden of showing that any particular item of food was not taxable (Tax Law, § 1132, subd [c]). He did not meet that burden here. Petitioner produced no payroll records to show how many employees were working for him at a given time and the numbers of meals they consumed or had charged against their wages. He also failed to produce any evidence of the amount of food lost through waste and spoilage.

Neither the Tax Commission nor the auditor was required to fix an allowance for those items through speculation. Determination confirmed, and petition dismissed, without costs. Mahoney, P.J., Main, Mikoll, Yesawich, Jr., and Weiss, JJ., concur.