■ In the Matter of HANRATTY's/732 AMSTERDAM TAVERN, INC., et al., Petitioners, v NEW YORK STATE TAX COMMISSION, Respondent. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission which denied petitioners' application for a revision of a determination or refund of sales and use taxes under articles 28 and 29 of the Tax Law for the periods June 1, 1973 through May 31, 1976. Petitioner Bradford Swett, individually and as a sole owner of a corporation, owned and operated a neighborhood tavern on Amsterdam Avenue in New York City throughout the period involved herein. On November 10, 1976, after an audit, respondent Tax Commission issued a notice of determination and demand for payment of additional sales taxes in the amount of $37,211.26, exclusive of penalty and interest, to petitioners. In this proceeding, petitioners seek to revise and annul respondent's determination. On April 23, 1976, the auditor for the Tax Commission examined the general ledger, cash disbursements journal, cash receipts journal and the Federal and State tax returns of petitioners. That examination disclosed that petitioners prepared their sales tax returns by computing the sales tax on the basis of 108% of income.* The auditor concluded that such method did not make for "an accurate return", and requested guest checks for a particular day (Feb. 25, 1976). She was given a batch of guest checks bound with a rubber band and was told that those were all of the guest checks for that day. Upon analysis, she found many gaps in the sequence of the numbers used. Examination of the guest checks for another day again indicated that the same sequential gap pattern existed. The auditor then ran a tape on all of the guest checks for the month of February, 1976 and found several overages and underages in dollars. The tabulation of these guest checks also did not reconcile with that entered in petitioners' general ledger. The auditor concluded that the guest check method was inaccurate. The auditor determined petitioners' gross profit for the three-year period. Beer, wine and liquor combined produced a book markup of 232%. The markup for food showed a book markup of 54.3%. Based on past experience, using the selling prices according to petitioners' menus and the selling prices given by the bartender, it was concluded that both of the book markup percentages were too low. Utilizing petitioners' purchase invoices for the month of February, 1976, and sales prices based on petitioners' menu and glass sizes, the auditor conducted a markup test on liquor, beer and wine allowing 15% for spoilage and waste. She determined that a 35% markup for wine more directly reflected petitioners' actual sales. She used a standard 125% markup for food which

---

* This method of computing the tax due is based on the fact that the price charged the customer includes the tax, e.g., a bottle of beer is sold for a dollar. The dollar represents 92 cents for the beer and 8 cents for the tax. The taxpayer then would divide the amount of the total sales receipts by 108 to arrive at the sales and the tax (e.g., $10,000 sales ÷ 108% = $9,259.26 sales and $743.74 tax).

more accurately reflected the food markup used by tavern businesses comparable to petitioners. These markup computations resulted in an increase in taxable sales of 38.44% and additional sales taxes in the amount of $37,211.26 which sum was assessed against the taxpayer. After a hearing, the Tax Commission found that petitioners used an imprecise method of calculating sales taxes due; that the guest checks provided the auditor were numbered in sequence but several gaps in the sequence made this type of direct check of sales tax due unreliable; and that the auditor decided to do markup tests because the guest checks were unreliable and also because the auditor believed that petitioners' records did not truly reflect the volume of sales recorded by comparable business enterprises. The Tax Commission further concluded that the method utilized by the auditor was proper because examination of the guest checks was attempted but found unreliable because of unexplained sequential gaps. Petitioners' main contention is that the auditor's resort to an audit by extrapolation was improper because petitioners' records were complete as far as is reasonable and readily available for inspection. We disagree. The determination of the State Tax Commission should be confirmed and the petition dismissed. When it is shown that the records of a business, such as the tavern business, including guest checks, are unreliable and incomplete, as here, a "test period" audit using external indices is permissible (*Matter of Korba v New York State Tax Comm.*, 84 AD2d 655, mot for lv to app den 56 NY2d 502). Section 1135 of the Tax Law obligates the vendor to maintain his sales for inspection by the Tax Commission including a copy of each sales slip or receipt with the amount of the sales tax stated separately (Tax Law, §§ 1135, 1132, subd [a]). When conducting an audit, the State must determine the amount of tax due "from such information as may be available", but, "If necessary, the tax may be estimated on the basis of external indices" (Tax Law, § 1138, subd [a], par [1]). The findings of the Tax Commission are supported by substantial evidence. There is a rational basis in the record to warrant the utilization of external indices, namely, a "test period" audit to compute the sales tax due. Petitioners' attempt to demonstrate at the hearing that the guest checks were complete and that missing checks could be accounted for fell far short of that objective. We have considered petitioners' other contentions and find them unpersuasive. Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Sweeney, Kane, Mikoll and Levine, JJ., concur.