■ In the Matter of Harry Skiadas et al., Doing Business as J & G Food Shop, Petitioners, v State Tax Commission, Respondent. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission which sustained a sales tax assessment imposed pursuant to article 28 of the Tax Law. During the period involved herein petitioners owned and operated J & G Food Shop in Garden City Park, New York. On February 5, 1975, the audit division of the State Sales Tax Bureau issued a notice of determination and demand for payment of sales tax due for the period March 1, 1969 through February 28, 1974 in the amount of $37,418.60 plus interest and penalties. This figure was later revised by the audit division to $35,440.53. The statute pursuant to which petitioners were taxed is section 1105 (subd [d], par [i]) of the Tax Law. Effective July 1, 1971, this statute was amended to provide that every restaurant sale of food in this State is subject to the sales tax (L 1971, ch 405, § 1). This is the so-called "hot dog tax". Prior to

the amendment, the statue only taxed food sales in excess of $1. Thus, the audit in this case involved different audit methods for the periods before and after the amendment's July 1, 1971 effective date. For the audit period prior to the statute's amendment, petitioner's food purchase records were examined and found to be in the amount of $283,168.48. This amount was marked up 100% to determine total food sales for the period in the amount of $566,336.96. In order to determine typical sales for the restaurant for a one-week period and to determine the percentage of those sales which exceeded $1 and were subject to the sales tax, the audit division, in the absence of any adequate records maintained by petitioners, chose six tapes representing days during August and September of 1972, which, after examination, revealed that 79.41% of the total sales represented taxable sales of $1 or more. This percentage was then applied to the estimated amount of pre-July 1, 1971 food sales ($566,336.96) and it was determined that taxable sales amounted to $449,728.18. Petitioners had only reported a taxable percentage of 35% of food sales. For the period July 1, 1971 through February 29, 1972, petitioners' total food sales, based on a 100% markup of food purchases, amounted to $180,477.28. This entire amount was subject to the sales tax since it represented sales after the $1 exclusion was eliminated. Petitioners, however, had only reported sales for the period in the amount of $135,003, resulting in an "error rate" of 44.35%. For the period March 1, 1972 through February 28, 1974, this error rate of 44.35% was applied to the total taxable sales reported by petitioners ($570,648) to determine additional taxable sales of $253,082.34. Following a hearing respondent modified the audit division's sales tax assessment after finding (1) that petitioner's records for the period March 1, 1972 through February 28, 1974 were adequate and that a markup test for that period should not have been used, (2) that employees' meals constituted salaries and were not subject to sales tax, and (3) that petitioners sold soda in quantities different from those used by the audit division in making its determination. The petition was granted insofar as necessary to correct these errors, but was in all other respects denied. This transferred CPLR article 78 proceeding seeking to challenge respondent's determination ensued. The record demonstrates unequivocally that petitioners' records for the period March 1, 1969 through February 29, 1972 were unreliable and incomplete. The only records which were available consisted of hand-recorded entries in a ledger of gross sales figures for each day which were not objectively reliable to satisfy the statutory requirement that records of individual sales be retained for a period of three years (Tax Law, § 1135). Accordingly, it was proper to determine petitioners' tax liability for this period by resort to other indices, such as purchases (Tax Law, § 1138, subd [a], par [1]; *Matter of Urban Liqs. v State Tax Comm.*, 90 AD2d 576; *Matter of Hanratty's/732 Amsterdam Tavern v New York State Tax Comm.*, 88 AD2d 1028, 1029, mot for lv to app den 57 NY2d 608). Next, petitioners' own expert witness testified that the 100% markup used by the audit division in estimating sales based upon purchases was a conservative figure and petitioners presented no evidence to the contrary. While petitioners' arguments that the 100% markup figure used was overstated because of inflation and that the audit failed to consider waste and spoilage of food may have some merit, they failed to document their contentions. While exactness in an audit is not required, whatever inexactness existed in the audit was the result of petitioners' faulty recordkeeping (see *Matter of Korba v New York State Tax Comm.*, 84 AD2d 655, 656; *Matter of Markowitz v State Tax Comm.*, 54 AD2d 1023, affd 44 NY2d 684). Petitioners failed to demonstrate, by clear and convincing evidence, that the amount of tax assessed was erroneous (see *Matter of Urban Liqs. v State Tax Comm., supra*). Finally, since the taxing authorities did not fail to comply with any statutory time limits and petition-

ers failed to pay the amount of tax assessed and then seek a refund, respondent is not prohibited from collecting interest and penalties (see Tax Law, § 1145). Accordingly, respondent's determination should be confirmed in all respects. Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Sweeney, Kane, Weiss and Levine, JJ., concur.