■ In the Matter of LIONEL LEASING INDUSTRIES COMPANY, INC., Petitioner, v STATE TAX COMMISSION, Respondent. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission which sustained fuel and highway use tax assessments imposed pursuant to articles 12-A and 21 of the Tax Law.

From the record, it would appear that petitioner is primarily engaged in the wholesale business of selling egg containers. Those products which were delivered by petitioner were done so by the use of four vehicles, and by another five to seven vehicles to a more limited extent.

On April 28, 1978, the Audit Division of the New York State Department of Taxation and Finance assessed petitioner with an additional highway use tax in the amount of $22,964.83, plus interest and penalties, and an unpaid fuel use tax in the amount of $14,488.80, plus interest and penalties, pursuant to the above-referenced statutes for the period of October 1, 1973 through September, 1977. During this period of time, petitioner was required to submit monthly returns as to the mileage that its vehicles traveled in New York State (Tax Law, § 505) and to pay the appropriate amount of tax (Tax Law, § 506). The record does not include the monthly tax returns but it is undisputed that, during the four-year period which was audited, petitioner reported total mileage of 300,088 miles of which it claimed that only 95,066 were traveled within New York State. It also filed highway use tax returns under the maximum gross weight filing option permitted under section 503 of the Tax Law. The taxes paid were on the basis of an average maximum gross weight of 53,000 pounds for each of its tractor trailer combinations. The tax rate is based upon gross weights.

After an audit, tax assessments were issued as hereinbefore described based upon a gross weight average of 72,000 to 74,000 pounds, as opposed to 53,000 pounds as reported, and 1,006,698 miles traveled, as opposed to 300,088 as reported, of which 205,022 miles were allowed as out-of-State mileage and not taxable. At the time of the audit, petitioner was unable to produce the vehicular daily logs required by section 507 of the Tax Law. According to petitioner, the logs were destroyed by a fire or by water damage or were thrown out. Petitioner's president's testimony was that he did not consider the keeping of the logs to be important. During the audit, petitioner did not provide the auditor with any record that indicated the daily use of any of

its vehicles except, possibly, the operation of a vehicle by one driver for the period January 1, 1977 through June 30, 1977. Those records were completely void as to starting points, routes traveled, destinations and miles traveled. Petitioner protested the assessments and was granted a review hearing by the State Tax Commission. The Tax Commission affirmed the assessments and this CPLR article 78 proceeding ensued.

At the hearing, the department's auditor testified that his determination of the additional mileage was based upon actual odometer readings of the various vehicles made by him, motor vehicle dealer's records and the records of highway checks made by other governmental agencies. His determination in that regard was not contested affirmatively. His determination of average gross weights was not contested in any respect.

The principal issue raised by petitioner was its contention that a greater portion of the total mileage found to have been traveled by its vehicles should have been allocated to out-of-State travel. The affirmative evidence introduced by petitioner at the hearing was what purported to be summaries of the logs of one driver for the first six months of 1977 in an effort to prove that 81.6% of its total mileage was out-of-State. Precisely why those logs were not lost or destroyed in the same manner as the others was not explained to the satisfaction of the Tax Commission. That evidence was considered by the Tax Commission to be of no consequence because the summaries were lacking in specificity and could not be established as representative of all drivers and all vehicles for the four-year period of the audit. It should be noted that the summary concluded that the particular driver had driven petitioner's vehicles a total of 52,411 miles during the six-month period. That figure carried to its mathematical conclusion would indicate that petitioner's four drivers during the four years of the audit drove 1,677,152 miles. If that were so, petitioner understated its total mileage on its tax returns by 1,377,064 miles.

Petitioner also offered sales invoices for the same period to prove that approximately the same percentage of the total dollar volume of its sales was to out-of-State customers. However, petitioner did not offer any documentary evidence or testimony by witnesses to correlate the sales with the actual vehicles used in the delivery of its products. The points of departure from New York State and the points of re-entry within the State were not disclosed. The Tax Commission concluded that the sales records, without further proof, did not establish any reliable basis upon which to allocate out-of-State mileage. Section 507 of the Tax Law requires every carrier to whom a permit is issued to keep a

complete and accurate daily record which shall show the miles traveled in this State by each vehicular unit and such other information as the Tax Commission may require. By regulation of the Tax Commission (20 NYCRR 483.1 *et seq.*), each carrier must maintain a trip record with the date of each trip, the permit and vehicle numbers, and the point of origin and destination of each trip together with other information.

The duty established by the Tax Law and the Tax Commission's regulations are not to be regarded lightly. It is also the taxpayer's duty to keep the records so that they are readily available to the Tax Commission.

Where the taxpayer's records contain substantial discrepancies and there are inadequate or no records, it is impossible to determine petitioner's tax liability without resort to outside indices. The department is required to then select a method of audit reasonably calculated to reflect the taxes due. Petitioner must by clear and convincing evidence demonstrate that the method or the tax was erroneous (*Matter of Urban Liqs. v State Tax Comm.,* 90 AD2d 576, 577). Where the taxpayer's record-keeping is faulty, exactness is not required of the audit, nor is an item-by-item analysis necessary (*Matter of Korba v New York State Tax Comm.,* 84 AD2d 655, 656). The legislative intent in imposing the highway use tax was to equitably spread the cost of highway maintenance in proportion to the wear and damage caused by the weighted vehicle (*Matter of Consolidated Freightways Corp. v Tully,* 89 AD2d 270, 272, affd 59 NY2d 897). In construing a statute, the court should consider the mischief sought to be remedied and should favor a construction which will suppress the evil and advance the remedy (*Matter of New York Life Ins. Co. v State Tax Comm.,* 80 AD2d 675, 677, affd 55 NY2d 758).

Here, the taxpayer's blatant failure to comply with record-keeping procedures, as well as his cavalier attitude in approaching the audit and its attempt to totally shift the burden for sifting through records which would be of little help in determining the actual tax due, should not be condoned by the courts. This would "not only thwart the legislative intent behind the highway use tax * * * but would reward those carriers who underreported" (*Matter of Decato Bros. v State Tax Comm.,* 90 AD2d 386, 388, affd 59 NY2d 911). Petitioner has the burden of proving the deficiency assessment improper, and if there are any facts or reasonable inferences from the facts to support the Tax Commission's determination, the assessment should be confirmed (*Matter of Levin v Gallman,* 42 NY2d 32, 34). Ordinarily, determinations of the Tax Commission are not disturbed by the

courts in CPLR article 78 proceedings unless clearly shown to be erroneous (58A NY Jur, Taxation, § 909, p 316). Section 510 of the Tax Law provides in pertinent part: "In case any return filed pursuant to this article shall be insufficient or unsatisfactory to the tax commission, or if no return is made for any period, the tax commission shall determine the amount of tax due from such information as is available to the commission."

The department's auditor used the available information which he gathered to arrive at the total mileage driven by petitioner's vehicles. He had no information as to the number of miles driven outside the State other than that reported by the taxpayer itself. He allowed out-of-State mileage for the exact number of miles claimed by petitioner. Consequently, petitioner is in no position to complain about the allocation unless it can come forward with clear and convincing proof to the contrary. In this respect, we note that petitioner has not offered into proof any evidence of any returns for highway use taxes in any other State, nor any receipts for the purchase of fuel either in or outside New York State.

Computation of the fuel use tax was based upon its allocation of mileage to travel within New York State and the presumptions provided by Tax Commission regulations (see 20 NYCRR 491.3 [c]).

We find that the determination of the Tax Commission is supported by substantial evidence and is neither arbitrary nor capricious.

Determination confirmed and petition dismissed, with costs. Kane, J. P., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.