■ In the Matter of JOHN A. SNYDER, Doing Business as SNYDER'S GROCERY, Petitioner, v STATE TAX COMMISSION OF THE STATE OF NEW YORK, Respondent.—Mahoney, P. J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of respondent which sustained a sales and use tax assessment imposed under Tax Law articles 28 and 29.

Petitioner owns and operates a small grocery store in the Village of Painted Post, Steuben County. In August of 1975, representatives of the Audit Division of the Department of Taxation and Finance (Department) commenced an audit of petitioner for the period December 1972 through May 1976. They concluded that petitioner's books and records were not up to date and were otherwise insufficient upon which to base an audit. The auditors decided to perform a test period audit for the quarter of September 1974 through November 1974. As a result of the audit, petitioner was assessed a deficiency of $43,435.16 plus penalty and interest of $60,697.03, for a total of $104,132.19. Petitioner sought review by respondent. After respondent sustained the deficiency, petitioner commenced this CPLR article 78 proceeding, which has been transferred to this court.

Initially, petitioner contends that his records were not inadequate such that the Department had no authority to conduct the test-period audit. We are constrained by the decision of the Court of Appeals in *Matter of Licata v Chu* (64 NY2d 873) to reject this argument.

Petitioner also challenges the audit itself as flawed. In our view, even a cursory examination reveals that, accepting the Department's figures, there are glaring inconsistencies in the audit. For the three-month test period, the Department found that petitioner made purchases of $106,363.36, of which $53,263.88 would be taxable when resold and $53,099.48 would not. The Department then made the assumption that every dollar's worth of taxable merchandise purchased in that quarter was actually resold in that quarter. Petitioner's markup on taxable items was calculated and applied to the $53,263.88, resulting in projected taxable sales for the quarter of $70,095.40. Petitioner reported only $31,703 in taxable sales for the quarter. Since the projected figure was 2.211 times the reported figure, that ratio was applied to the reported taxable sales for the entire 3½-year audit period, thus more than doubling the tax due.

If there was even a shred of support for the Department's assumption that all of the taxable items purchased in the test period were actually sold during that quarter, the above-stated calculations would be eminently reasonable. However, this assumption is belied by the Department's own figures. Most important, as stated in respondent's decision, the Department did not challenge petitioner's figures of $106,367 in gross sales for the quarter. As a result, since the Department found total purchases of $106,363.36 in the quarter, it is clear that either petitioner made virtually no profit during the quarter or, as petitioner contends, not all of the purchases were sold during the quarter. Petitioner's explanation was twofold: (1) a hurricane in June of 1972 destroyed all of his stock, and (2) during the test period, he was expanding the floor space of the store by 25%. Thus, he argues, a portion of the total purchases was to replenish inventory, and not completely for resale during that quarter. Regardless of whether petitioner's explanation is accepted,* the fact remains that since the figures for total purchases and gross sales found by the Department are virtually identical, the Department's basic assumption, that all of the items purchased in the quarter were actually sold in the quarter, is flawed.

This conclusion is reinforced by examination of the Department's figures after it applied the markup. As stated above, the Department found $53,263.88 in purchases of taxable items for the quarter and added a markup to arrive at a figure of $70,095.40 for projected taxable sales for the quarter. Also, as stated above, the Department accepted petitioner's figure of $106,367 in total sales for the quarter. Subtracting the projected taxable sales for the quarter from total sales for the quarter results in $36,271.60 in nontaxable sales. As a result, under the Department's calculations, petitioner purchased $53,263.88 in taxable items during the test quarter and sold them for $70,095.40, while at the same time purchasing $53,099.48 in nontaxable items and selling them for $36,271.60—a loss of $16,827.88! Such an absurd result indicates that, regardless of the theories or calculations relied on by the Department, the audit report is, on its face, irrational. Since respondent's decision is inconsistent with its own findings of fact, its determination must be annulled and the matter remitted for further proceedings.

---

* While petitioner did not offer statistical proof of the amount of purchases which should be attributable to increasing inventory, he did offer documentary proof of the substantial growth in inventory in 1973 and 1974.

Determination annulled, with costs, and matter remitted to respondent for further proceedings not inconsistent herewith. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.