In the Matter of RAEMART DRUGS, INC., Petitioner, v JAMES W. WETZLER, as Commissioner of Taxation and Finance, et al., Respondents.

Third Department, April 26, 1990

APPEARANCES OF COUNSEL

*Arnold B. Panzer* for petitioner.

*Robert Abrams, Attorney-General (Denise A. Hartman* and *Nancy A. Spiegel* of counsel), for respondents.

OPINION OF THE COURT

HARVEY, J.

Petitioner is a corporation engaged in the business of operating a chain of retail drug stores in New York County. Among the approximately 20,000 types of items sold by petitioner were cigarettes, which were sold both by the pack and by the carton and which accounted for approximately 15% of petitioner's gross receipts. Petitioner sold cigarettes using the "unit price" method, whereby the sales tax due on the taxable portion of receipts from their sale is included as part of the sales price. On a typical day, petitioner's stores would handle transactions involving 5,000 customers and yield 50 rolls of cash register tape. Petitioner's cash registers, which are typical of those used in the retail drug business, indicate how much sales tax is added to an item but do not identify the nature of the item sold. Therefore, in accordance with petitioner's use of the "unit price" method, no sales tax was added on sales of cigarettes in ringing up the price charged on petitioner's cash registers. Petitioner color coded its price stickers so as to distinguish taxable from nontaxable merchandise, resulting in cigarette sales being indistinguishable from sales of wholly nontaxable items on the cash register tapes.

Petitioner duly filed tax returns for the period of April 1, 1981 through February 29, 1984 and remitted payments for sales taxes that it reported on those returns. These returns listed a total figure for taxable sales and, as a separate entry, for sales taxes collected from cigarette sales. The calculations for cigarette sales was based on petitioner's invoices from cigarette wholesalers. Petitioner's accountant arrived at the totals for taxable sales by multiplying its gross daily sales by 58%, the taxable sales ratio computed by the Audit Division of the Department of Taxation and Finance in an audit performed on petitioner in 1980. However, the accountant computed an additional amount due on petitioner's cigarette sales despite the fact that cigarette sales were included in the gross sales to which the 58% figure was applied. The effect of this procedure was that "the tax collected by * * * petitioner with respect to the cigarettes which it actually sold during the

taxable periods in issue was inadvertently reported and remitted twice with its returns". Recognizing its mistake, petitioner filed 13 applications for credit or refund of State and local sales taxes of $180,357. This amount was subsequently reduced by petitioner to $141,192.

Following submission of the refund request, the Audit Division audited petitioner's books and records. Because petitioner's cash register tapes did not identify the sale of cigarettes, the auditor estimated the tax liability using a test period by applying a 59.738% taxable amount to petitioner's gross sales and a markup percentage of 30.9 based on the audit done in 1980. This audit resulted in a finding that petitioner had overreported and overpaid $122,738.07 in taxes. However, following a hearing, the Hearing Officer denied the refund request on the basis that petitioner had failed to maintain sufficient records to permit a determination of the exact amount of its liability since liability and refund entitlement were allegedly not permitted based on estimates. Respondent Tax Appeals Tribunal affirmed this determination. Petitioner then commenced this CPLR article 78 proceeding to challenge the Tribunal's determination.

In our view, the Tribunal incorrectly denied petitioner's application for a refund on the basis that petitioner failed to maintain appropriate records of taxable sales and the amount of tax collected. Relying on this court's decision in *Matter of Saltzman v New York State Tax Commn.* (101 AD2d 910), the Tribunal opined that because petitioner's exact tax liability could not be determined from its records, no refund could be granted on the basis of an estimate. We find, however, that petitioner's records sufficiently complied with the Department's regulation and that the Tribunal's reliance on *Saltzman* is misplaced in this instance. Tax Law § 1135 (a) (1) requires every person who collects taxes to keep records of every sale and the tax payable thereon. While this court has stated in a different context that the sufficiency of a taxpayer's records "means the ability to verify taxable sales receipts and conduct a complete audit" *(Matter of Giordano v State Tax Commn.,* 145 AD2d 726, 727), 20 NYCRR 533.2 (b) (2) states that *"[t]he sales record either* must provide sufficient detail to independently determine the taxable status of each sale and the amount of tax due and collected thereon *or may be substantiated by analysis of supporting records"* (emphasis supplied). 20 NYCRR 533.2 (b) (2) (ii) goes on to state that: "Cash register tapes which indicate whether each item sold is

in a taxable or exempt category, but which do not identify the individual items sold, may be sufficient to prove gross sales but are not sufficient to independently determine the tax status of each sale. *In this situation, other records will be required to substantiate the proper collection of tax due, such as purchases records, identification of taxable and nontaxable merchandise on display or documentation of like probative value* (emphasis supplied).

Here, the auditor principally involved in the examination of petitioner's records conceded at the hearing that petitioner possessed all of the records listed on the Field Audit Report document checklist, including an essentially complete set of invoices,* cash receipts, cash disbursement journals, a general ledger, entry sheets and complete bank statements *(see,* 20 NYCRR 533.2 [b] [1] [i]), as well as sales tax returns, depreciation schedules, a check register, canceled checks and monthly bank statements. Accordingly, the only basis for the Audit Division's assertion that petitioner's records were inadequate is that petitioner, by reason of the cash registers it uses, cannot produce a cash register tape that identifies each item sold. This finding was made despite the unrefuted testimony that the type of cash register utilized by petitioner was typical of those used in the retail drug business.

We find this conclusion to be irrational. In accordance with the language contained in 20 NYCRR 533.2 (b) (2) and 533.2 (b) (2) (ii), petitioner kept extensive records that would allow for a fair and accurate substantiation of the tax due and amount of reimbursement. This situation differs from the one presented in *Matter of Saltzman v New York State Tax Commn. (supra),* where a retail drugstore sought a refund of overpaid taxes after a division audit revealed that the drugstore had apparently overcollected taxes from its customers and then sought a refund of the overpaid taxes. This relief was properly denied because not only did petitioner fail to establish that the customers had been repaid the excess taxes, but that petitioner's books were also so deficient that any determination that taxes were overpaid in the first place would have been a matter of sheer speculation. While the petitioner in *Saltzman* would have been unjustly enriched by a refund, this petitioner merely seeks a refund of its money

---

* Although there were a few invoices which petitioner was unable to produce, the auditor admitted that their significance was not such as to prevent him from determining petitioner's taxable sales "within his usual level of exactitude".

which it overpaid the Department of Taxation and Finance and which it did not receive from its customers. Petitioner did not calculate its error based on an arbitrary figure but instead used the method of calculation agreed to by the Department and petitioner in calculating petitioner's 1980 audit. Case law does not expressly mandate practically perfect record keeping in order to receive a refund of an undisputed overpayment, but only to successfully challenge the formula utilized in an auditor's assessment of tax liability *(see, e.g., Matter of Licata v Chu,* 64 NY2d 873; *Matter of Grant Co. v Joseph,* 2 NY2d 196, *cert denied* 355 US 869; *Matter of Giordano v State Tax Commn.,* 145 AD2d 726, *supra; Matter of Sloan's Supermarkets v Chu,* 140 AD2d 794; *Matter of S.H.B. Super Mkts. v Chu,* 135 AD2d 1048; *Matter of Ace Provision & Luncheonette Supply v Chu,* 135 AD2d 1070; *Matter of Snyder v State Tax Commn.,* 114 AD2d 567; *Matter of Skiadas v State Tax Commn.,* 95 AD2d 971).

Petitioner here is not challenging the assessment of its tax liability or the formula used. Indeed, the Department admits that petitioner overpaid taxes of approximately $122,738.07. It is undisputed that if the Department had utilized the same formula and discovered a deficiency, such amount would have been duly assessed from petitioner without serious challenge. As it stands, petitioner is being arbitrarily punished because it did not use cash registers such as those used by the big supermarket chains that identify every unit sold. Accordingly, we annul the Tribunal's determination and grant the petition.

MAHONEY, P. J., KANE, CASEY and MERCURE, JJ., concur.

Determination annulled, with costs, petition granted, and matter remitted to respondent Tax Appeals Tribunal for further proceedings not inconsistent with this court's decision.